IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL NASH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 06 C 4511 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| JEFFREY LAWLER, JOHN EDWARDS, | ) | |
| JERRY LIBIT, and KEITH WRZALA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Nash ("Nash") filed suit against Jeffrey Lawler ("Lawler"), John Edwards ("Edwards"), Jerry Libit ("Libit"), and Keith Wrzala ("Wrzala")(collectively "Defendants") alleging that Defendants retaliated against Nash for speaking out on matters of public concern and violated his rights under the First and Fourteenth Amendments to the Constitution of the United States. Specifically, Nash alleges that Defendants engaged in a campaign of retaliation against Nash because Nash reported citizen complaints regarding Libit's conduct. Nash alleges that the retaliation included, among other things, unwarranted investigations into Nash's actions and a two-day unpaid suspension. In addition to this lawsuit, Nash has also challenged his suspension in the Illinois state courts. Defendants move for summary judgment on Nash's retaliation claim. For the reasons set forth below, Defendants' Motion for Summary Judgment is denied as premature and this action is stayed pending resolution of the state court proceedings related to Nash's suspension.

## STATEMENT OF FACTS

Nash is a patrol officer for the Barrington/Inverness Police Department in Barrington, Illinois

1

and has held this position from January 6, 1986 to the present. Pltf. 56.1 Resp. at ¶¶ 1, 7.[1]
Defendants Lawler, Edwards, Libit, and Wrzala are also members of the Barrington/Inverness Police
Department and hold the positions of Police Chief, Deputy Chief of Police, Sergeant, and Corporal,
respectively. Pltf. 56.1 Resp. at ¶¶ 2, 3, 4, 5. Sergeant Libit supervised Nash from late 1998 through
2004; Corporal Wrzala temporarily assumed the shift commander role and supervised Nash from the
beginning of August through August 25, 2004 while Sergeant Libit was on vacation. Pltf. 56.1 Resp.
at ¶¶ 8, 20, 28; Def. Ex. J, Wrzala Dep. Tr. at 9.

In February 2005, Police Chief Lawler suspended Nash for a period of two days. Def. 56.1
Resp. at ¶ 18. The primary reason given for the suspension was Nash's failure to respond to two
separate radio calls while on shift with Corporal Wrzala on August 6, 2004 and two additional radio
calls during his shift on September 16, 2004. Pltf. 56.1 Resp. at ¶¶ 23, 43; Def. Mem. Supp. Summ.
J. at 6; Def. Ex. Z at 2. Nash does not dispute that he failed to respond to the calls at issue on August
6 and September 16. Pltf. 56.1 Resp. at ¶¶ 22, 34, 46. Instead, he offers justification for his failure
to respond and disputes the proffered reasons for his two-day suspension.[2]

Following Nash's failure to respond on August 6, Corporal Wrzala emailed his next-available
supervisor, Deputy Chief Edwards, informed Edwards of the missed calls, and requested advice on
how to handle the situation. Pltf. 56.1 Resp. at ¶ 23. Corporal Wrzala spoke with Nash regarding

---

[1] Citations to Plaintiff's "Statement of Plaintiff Michael Nash Pursuant to Local Rule 56.1(B)" have been abbreviated to "Pltf. 56.1 Resp." Citations to "Defendants' Responses to Plaintiff's Statement of Additional Facts" have been abbreviated to "Def. 56.1 Resp."

[2] Specifically, in regards to the two August 6 calls, Nash contends that both he and another officer began to respond to the first call, but after some discussion, another officer agreed to handle the call. Pltf. 56.1 Resp. at ¶ 22. Nash contends that he missed the second call due to a radio malfunction. *Id.* In regards to the two missed calls on September 16, Nash attributes those missed calls to a broken radio. Pltf. 56.1 Resp. at ¶ 34.

2

the missed calls on August 10, 2004. Pltf. 56.1 Resp. at ¶ 24. Meanwhile, on August 9, 2004, Deputy Chief Edwards requested copies of shift logs that itemized the August 6 dispatched radio calls. Pltf. 56.1 Resp. at ¶ 25. Upon Sergeant Libit's return from vacation on August 25, 2004, Deputy Chief Edwards also notified Sergeant Libit of Nash's failure to respond on August 6. Pltf. 56.1 Resp. at ¶ 29.

During the interim period between the two sets of missed calls, on September 2, 2004, Nash approached Deputy Chief Edwards and informed him of citizen complaints asserted by Michael Marshall ("Marshall"), a homeless man who lived in Barrington. Pltf. 56.1 Resp. at ¶ 53, Def. 56.1 Resp. at ¶ 2. Marshall's complaints allege that Sergeant Libit harassed Marshall. Pltf. 56.1 Resp. at ¶¶ 53, 60.

On September 10, 2004, Sergeant Libit, with the assistance of Corporal Wrzala, commenced a formal investigation of Nash's failure to respond to two radio calls on August 6, 2004. Pltf. 56.1 Resp. at ¶ 31. Nash was notified of this formal investigation on September 16, 2004. Pltf. 56.1 Resp. at ¶ 33. That same day, Nash failed to respond to two additional radio calls. Pltf. 56.1 Resp. at ¶ 34.

Following Nash's failure to respond on September 16, Police Chief Lawler ordered an additional formal investigation into the missed calls. Pltf. 56.1 Resp. at ¶ 35. Again, Sergeant Libit and Corporal Wrzala were assigned the task of investigating the matter. Pltf. 56.1 Resp. at ¶ 36. Thereafter, on September 21, 2004, Nash wrote to Deputy Chief Edwards and relayed to him another complaint asserted by Marshall regarding Sergeant Libit's conduct. Pltf. 56.1 Resp. at ¶ 55. While the parties dispute when Sergeant Libit became aware of Nash's communications with Deputy Chief Edwards, it is undisputed that, on October 19, 2004 during the course of this investigation, Sergeant

Libit and Corporal Wrzala became aware of Marshall's complaints regarding Libit's alleged conduct. Pltf. 56.1 Resp. at ¶ 57.

Sergeant Libit and Corporal Wrzala completed their investigation on November 11, 2004 and recommended to Police Chief Lawler that Nash be suspended for twelve-days. Pltf. 56.1 Resp. at ¶ 37. Deputy Chief Edwards testified that, following the conclusion of the investigation, Sergeant Libit and Corporal Wrzala gave the investigation report to Edwards and that he and Lawler discussed the findings as well as the twelve-day suspension recommendation. Def. Ex. M, Edwards Dep. Tr. at 63-67. Police Chief Lawler did not discuss the missed radio calls with anyone other than Edwards. Pltf. 56.1 Resp. at ¶ 67. Police Chief Lawler then made the final determination as to Nash's suspension and, in February 2005, suspended Nash for a period of two days. Pltf. 56.1 Resp. at ¶ 40, Def. 56.1 Resp. at ¶ 18.

Nash appealed the two-day suspension to the Board of Fire and Police Commissioners of the Village of Barrington ("the Board"). Pltf. 56.1 Resp. at ¶ 41. After a formal hearing, the Board upheld the suspension on July 29, 2005. *Id.*; Def. Ex. Z at 3. Nash then filed a complaint against the Board, certain members of the Board, Police Chief Lawler, and Sergeant Libit in the Circuit Court of Cook County for administrative review of the Board's decision. Def. Ex. U at 1, Pltf. 56.1 Resp. at ¶ 42. During the state court proceedings, Nash argued, among other things, that Sergeant Libit was not the appropriate supervisor to conduct the investigation of Nash because Nash had taken a citizen complaint against Libit. Pltf. 56.1 Resp. at ¶ 42. The Circuit Court reversed the Board's decision to uphold the suspension. Def. Ex. U at 1-2. Following the state court's reversal, the Board appealed the Circuit Court's decision to the Illinois Appellate Court. Pltf. 56.1 Resp. at ¶ 43. In the midst of the state court proceedings, Nash simultaneously filed this Action on August 21, 2006. Def.

Ex. A at 1. On March 30, 2007, the Illinois Appellate Court reversed the judgment of the Circuit Court and upheld the original two-day suspension. Pltf. 56.1 Resp. at ¶ 43, Def. Ex. U at 1. Following the Illinois Appellate Court's reversal, Nash also filed a petition for leave to appeal to the Supreme Court of Illinois on July 17, 2007. Pltf. Resp. Mem. at 14; Pltf. Ex. 3 at 2. The petition is currently pending before the Supreme Court of Illinois. Pltf. Resp. Mem. at 14.

## **STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

**DISCUSSION**

Defendants argue that this Court is precluded from hearing Nash's claim under the doctrines of *res judicata* or claim preclusion because Nash previously appealed his two-day suspension to the Board and in state court.

A federal court must give a state court judgment the same preclusive effect that it would have in state court. *See* 28 U.S.C. § 1738; *Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002) (*citing Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 519 (1986)). To determine the preclusive effect of a prior state court judgment on federal litigation, the Court looks to the preclusion laws of the rendering state - in this case, Illinois. *Rogers v. Desiderio*, 58 F.3d 299, 300-01 (7th Cir. 1995). In Illinois, a final judgment on the merits, when rendered by a court of competent jurisdiction, "is conclusive as to the rights of the parties and their privies, and as to them constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." *Licari*, 298 F.3d at 666 (*citing Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001)). *Res judicata* applies to bar a subsequent action when the following three requirements are met: (1) there is an identity of causes of action; (2) there is an identity of parties or their privies; and (3) a final judgment on the merits was rendered by a court of competent jurisdiction. *Id.* (*citing Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001)). However, the doctrine of *res judicata* does not apply if the plaintiff did not have a full and fair opportunity to litigate his claim in state court.[3] *Pirela v. Vill. of N. Aurora*, 935 F.2d 909, 911 (7th Cir. 1991).

---

[3] The parties do not contend that they did not have a full and fair opportunity to litigate this claim and there is no evidence suggesting otherwise.

I.      *Identity of Causes of Action*

To determine whether identity of causes of actions exists, Illinois courts apply the "transactional test," as applied by Illinois courts. *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998). Under the transactional test, the assertion of different theories of relief that rely on the same set of operative facts constitutes a single cause of action for the purposes of *res judicata*. *Licari*, 298 F.3d at 667. *Res judicata* applies not only to all claims and issues actually decided, but also to "'all grounds of recovery and defenses which might have been presented in the prior litigation between the parties.'" *Pirela*, 935 F.2d at 911 (*quoting Henry v. Farmer City State Bank*, 808 F.2d 1128, 1234 (7th Cir. 1986)); *see also Durgins v. City of E. St. Louis,* 272 F.3d 841, 843 (7th Cir. 2001). In the context of state court administrative review actions, the Seventh Circuit has held that "[b]ecause Illinois (a) permits the joinder of *§ 1983* claims with administrative-review actions, and (b) applies the doctrine of merger and bar, . . . an administrative-review action forecloses any later *§ 1983* action in federal court arising out of the same transaction." *Durgins*, 272 F.3d at 843-44.

In the present case, Nash's sole claim - a § 1983 claim - stems from the same set of operative facts as the state court claim. Specifically, the claim flows from Nash's two-day suspension and the investigation leading up to the suspension. Nash initiated the prior administrative review action in an effort to challenge the Board's decision to uphold the two-day suspension that followed on the heels of Sergeant Libit and Corporal Wrzala's investigation, Deputy Chief Edwards and Police Chief Lawler's discussion, and Police Chief Lawler's ultimate decision to suspend Nash. Nash even alluded to the alleged impropriety of Sergeant Libit's investigation during the course of the state court proceedings. Because Nash's § 1983 claim could have been raised in the prior administrative

7

review action, it constitutes the same cause of action as was litigated in state court and the first requirement of *res judicata* is satisfied. *See Durgins*, 272 F.3d at 843-44 (a § 1983 claim will be precluded in federal court if plaintiff could have raised the claim in the previous state court administrative-review action); *Lolling v. Patterson*, 966 F.2d 230, 234-36 (7th Cir. 1992).

II.     *Identity of Parties or their Privies*

Under Illinois law, privity exists between "'parties who adequately represent the same legal interests.'" *Burris v. Progressive Land Developers, Inc.*, 602 N.E.2d 820, 825 (Ill. 1992). The relevant question is whether the parties share an identity of interest with those in the earlier proceeding. *Id.* at 826. Thus, it is the identity of interest rather than the nominal identity of the parties involved that is controlling. *Id.*

The prior state court action involved Nash, as named plaintiff, as well as Police Chief Lawler and Sergeant Libit, as named defendants. Thus, Nash, Police Chief Lawler, and Sergeant Libit meet the identity of parties requirement. Although Nash did not name Corporal Wrzala and Deputy Chief Edwards in the state action, they share an identity of interest with Police Chief Lawler, and Sergeant Libit. Specifically, all four officers share an interest in vindicating their actions leading up to and resulting in the suspension of Nash. For example, it is undisputed that Corporal Wrzala, like Sergeant Libit, occupied a supervisory role over Nash during one of the two failure to report incidents in question. In addition, Corporal Wrzala, like Sergeant Libit, participated in the formal investigation of Nash that commenced in September 2004 as well as the ultimate recommendation to suspend Nash for twelve days. Similarly, while the parties dispute Deputy Chief Edward's level of involvement in actually investigating the two failure to report incidents, it is undisputed that Deputy Chief Edwards was at least peripherally involved with effectuating the investigation, served

8

as a conduit between Sergeant Libit and Corporal Wrzala and Police Chief Lawler, and discussed the investigation report as well as the recommended suspension with Police Chief Lawler. Accordingly, the Court finds that the parties in this proceeding share an identity of interest with the parties in the state court proceedings.

III.     Final Judgment on the Merits

The doctrine of *res judicata* will not preclude a party from asserting a similar claim in a subsequent proceeding unless, in the prior proceeding, the court reached a final judgment on the merits. *Licari*, 298 F.3d at 666 (*citing Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001)). In Illinois, it is not clear whether a pending petition for leave to appeal affects the finality of a judgment for the purposes of *res judicata*. *See Rogers*, 58 F.3d at 302. Indeed, the Seventh Circuit has conceded that it has "no idea what the law of Illinois is on the question whether a pending appeal destroys the claim preclusive effect of a judgment." *Id*. This confusion arises from two conflicting Illinois supreme court decisions: *State Life Insurance Co. v. Board of Education*, 81 N.E.2d 877, 880 (Ill. 1948) and *Ballweg v. City of Springfield*, 499 N.E.2d 1373, 1375 (Ill. 1986). In *State Life,* the Ilinois Supreme Court held that the decision of the court of first instance retains its preclusive effect, regardless of whether or not the losing party appeals the decision. 81 N.E.2d at 880. Subsequently, in *Ballweg*, the court held that, for the purposes of collateral estoppel, "finality required that the potential for appellate review must have been exhausted." 499 N.E.2d at 1375. While *Ballweg* is limited to collateral estoppel, some Illinois appellate courts have extended *Ballweg* to claims of preclusion. *See, e.g., Luckett v. Human Rights Comm'n*, 569 N.E.2d 6, 10-11 (Ill. App. Ct. 1989); *Pelon v. Wall*, 634 N.E.2d 385, 388 (Ill. App. Ct. 1994). Other Illinois appellate courts, however, continue to follow *State Life*, which, as a result, has created an "intra-court conflict."

*Rogers,* 58 F.3d at 302 (*citing Illinois Founders Ins. Co. v. Guidish*, 618 N.E.2d 436, 440 (Ill. App. Ct. 1993)).

In the present case, Defendants contend that the appellate court's judgment should be given preclusive effect and this Court should either bar Nash's claim entirely or, at a minimum, stay the current proceedings. On the other hand, Nash argues that, because his petition for leave to appeal to the Supreme Court of Illinois is still pending, the state-court judgment is not final and claim preclusion does not apply. Given the uncertainty in Illinois law regarding the preclusive effect of an intermediate appellate court's judgment when the losing party files a petition for leave to appeal, this Court is hard-pressed to make a final determination as to the preclusive effect of the decision of the Illinois Appellate Court or to speculate as to the fate of Nash's petition for leave to appeal to the Illinois Supreme Court or the state court action. Consequently, the possibility of a stay pursuant to the *Colorado River* doctrine presents the most viable option at this juncture.

IV.  The Colorado River *Doctrine*

In *Colorado River*, the Supreme Court held that "there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). The Supreme Court emphasized, however, the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id*. "The 'clearest of justifications' must be present for a federal court to stay a proceeding pending completion of a state action." *Tyrer v. City of S. Beloit*, 456 F.3d 744, 751 (7th Cir. 2006) (quoting *Colorado River Water Conservation*

*Dist. v. United States,* 424 U.S. 800, 819 (1976)).

Under the *Colorado River* doctrine, a federal court may stay a suit in exceptional circumstances when there is a concurrent state court proceeding and the stay would promote "wise judicial administration." *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992). To determine whether a stay is appropriate under the *Colorado River* doctrine, a district court must first determine "whether the concurrent state and federal actions are actually parallel. Then, once it is established that the suits are parallel, the court must consider a number of non-exclusive factors that might demonstrate the existence of exceptional circumstances." *Tyrer*, 456 F.3d at 751 (quoting *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004)) (internal quotation marks omitted). The Seventh Circuit has refined the exceptional circumstances analysis to a consideration of ten factors:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of the state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Id.* at 754 (citing *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 968, 701 (7th Cir. 1992)). No single factor is necessarily determinative; in the end, what is required is "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise." *Id.* at 754-55. The determination of whether to grant a stay pursuant to the *Colorado River* doctrine lies within the discretion of the district court. *Ericksen v. Vill. of Willow Springs*, 876 F. Supp. 951, 957 (N.D. Ill. 1995).

*A. Parallel Actions*

There need not be formal symmetry between to actions in order for the actions to be "parallel" for purposes of the *Colorado River* doctrine; instead, generally, two actions are parallel "when substantially the same parties are contemporaneously litigating substantially the same issues" in different fora. *Tyrer*, 456 F.3d at 752 (citing *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988). In order to determine whether two suits are parallel, a district court should "examine whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues." *Id.* (citing *Clark*, 376 F.3d at 686). The absence of individual parties from the state court case does not, it and of itself, destroy parallelism, as the Seventh Circuit has held that "the simple expedient of naming additional parties" does not necessarily allow a party to avoid the *Colorado River* doctrine. *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir. 1985). If there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case," the presence of addition parties in a federal case who are not named in the state litigation will not destroy parallelism. *Id.*

This Court has already concluded that the Defendants are identical or in privity with certain named defendants in Nash's state action. The Court has also determined that the federal and state-court actions arise out of the same set of facts and involve substantially similar issues. Moreover, given that both actions arise out of Nash's two day suspension and the investigation leading up to the suspension, a final judgment in the state case will likely dispose of Nash's federal action. Accordingly, the Court finds that the state action and the federal action are parallel.

*B. Exceptional Circumstances Analysis*

An examination of the factors relevant to the exceptional circumstances analysis under the

*Colorado River* doctrine indicates that a stay of this Action is appropriate. First, the desirability of avoiding piecemeal litigation weighs heavily in favor of a stay. As previously mentioned, Nash has petitioned for leave to appeal the judgment of the Illinois Appellate Court. A final judgment in the state action may have some type of a preclusive effect on Nash's § 1983 claim. On the other hand, further proceedings in Nash's state action may void the preclusive effect of the state intermediate appellate court's judgment. Should this occur, Nash would then be entitled to a decision on the merits from the federal court. Thus, allowing the two suits to proceed concurrently would waste the parties' resources and risk duplicative or conflicting rulings. Second, the timing of Nash's state and federal actions also weighs in favor of a stay. Nash filed the current action in August 2006, nearly seven months before the Illinois Appellate Court reversed the lower state court's judgment. Nash then filed petition for leave to appeal to the Supreme Court of Illinois in July 2007, nearly eleven months after he filed suit in federal court. Third, the relative progress of the state and federal proceedings favors a stay. In the state action, the parties have already progressed through a full hearing before the Board, a reversal of the Board's decision by the state court, and a reversal of that order by the appellate court. In the federal action, the parties have completed discovery, but have yet to receive a decision on the merits.

Of the remaining factors, most are either inapplicable to the current factual scenario or do not weigh heavily in favor of or against a stay. For instance, there is no indication that the Illinois state court has assumed jurisdiction over property. Nor is there any indication that the federal forum is an inconvenient forum for resolution of the disputes between these parties as both lawsuits are pending in Illinois. With respect to the source of governing law, the federal action alleges a § 1983 claim, which is a federal statute. However, the state court could resolve this claim. Finally, there

13

is no indication that removal is an option in the current case or that Nash's § 1983 claim is vexatious or contrived.

The Seventh Circuit previously addressed the appropriateness of a stay when confronted with an analogous situation in *Rogers v. Desiderio*, 58 F.3d 299. In *Rogers*, the plaintiffs initially filed two lawsuits: one in state court and another in federal court. *Id.* at 300. Thereafter, the state court found against plaintiffs on the merits and plaintiffs appealed. *Id.* The defendants then moved to dismiss the federal case on the grounds of *res judicata*. After examining the "intra-court" conflict created by the state appellate courts' application of both *State Life* and *Ballweg*, the Seventh Circuit found that it was unclear whether a pending appeal as to a state court judgment destroys the preclusive effect of that judgment. *Id.* at 302. Citing *Colorado River*, the Seventh Circuit then concluded that the more prudent course was to stay of the federal proceedings pending a decision by the Illinois Appellate Court and then to proceed as appropriate in light of the final disposition of the state court action. *Id.*

Similarly, in *Dwyer v. Evoy*, 12 F. Supp. 2d 832 (N.D. Ill. 1998), the court was faced with a situation analogous to *Rogers* and this Action. In that case, plaintiffs filed suit in state court for administrative review of a board decision. *Id.* at 834. After the state court entered a judgment in favor of plaintiff, defendants appealed to the intermediate appellate court and filed a motion to stay enforcement of the state court's judgment pending defendants' appeal. *Id.* While the state action was pending, plaintiff also filed a three-count complaint in federal court. *Id.* Defendants then moved for summary judgment and argued that *res judicata* barred the federal claims. *Id.* Noting the uncertainty as to whether Illinois courts would give the state court judgment preclusive effect, the court found that the best course of action was to stay the federal action pursuant to the *Colorado*

*River* doctrine until the state court had resolved the appeal. *Id.* at 836-37.

Like the courts in *Rogers* and *Dwyer*, this Court finds that consideration of the factors relevant to the "exceptional circumstances" analysis indicates that a stay is appropriate under the *Colorado River* doctrine. Accordingly, this action shall be stayed pending resolution of the state court action. *See Rogers*, 58 F.3d at 302 ("A federal judge confronted with duplicative litigation need not barge ahead on the off-chance of beating the state court to a conclusion. It is sensible to stay proceedings until an earlier-filed state case has reached a conclusion, and then (but only then) to dismiss the suit outright on grounds of claim preclusion.").

## **CONCLUSION AND ORDER**

For the foregoing reasons, Defendants' Motion for Summary Judgment is denied as premature and the case is stayed pending resolution of related state proceedings, at which time the Court will proceed as appropriate in light of the final disposition of the state court action.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: October 29, 2007